UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

STEPHEN P. JONES,

    Plaintiff,

v.                                                                 Case No. 5:20-cv-247-NPM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____

**OPINION AND ORDER**

Plaintiff Stephen Jones seeks judicial review of a partially favorable decision awarding Social Security disability insurance benefits. While the Social Security Administration concluded that Jones became disabled on January 5, 2018, Jones contends he became disabled nearly three years earlier on March 1, 2015. The administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 24). As discussed in this opinion and order, the decision of the Commissioner of Social Security is affirmed.

**I.    Eligibility for Disability Benefits and the Administration's Decision**

    **A.    Eligibility**

The Social Security Act and related regulations define disability as the

---

[1] Cited as "Tr." followed by the appropriate page number.

inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when such functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.  Factual and procedural history

Jones is 56 years old. (Tr. 45, 75, 90). He received a GED and additional vocational training as an electrician, and he last worked as a funeral car chauffeur and an electrician. (Tr. 45, 47-50, 66, 100, 115, 249). On June 16, 2017, Jones applied for disability insurance benefits. (Tr. 16, 118, 134, 198). Jones asserted a

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

disability onset date of March 1, 2015, due to the following: bipolar with psychotic features; depression; anxiety; paranoid delusions; and hallucinations. (Tr. 16, 104, 120, 198).

Jones's application was administratively denied initially on January 19, 2018, and upon reconsideration on May 17, 2018. (Tr. 16, 103-117, 119-133). At Jones's request, Administrative Law Judge Edgardo Rodriguez-Quilichini held a hearing on June 11, 2019. (Tr. 41-73, 163, 165). The ALJ issued a partially favorable decision on July 12, 2019, finding Jones not disabled prior to January 5, 2018, but finding that Jones became disabled on that date and has continued to be disabled through the date of decision. (Tr. 12-34).

Jones's timely request for review by the administration's Appeals Council was denied. (Tr. 1-3). Jones then brought the matter to this Court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Docs. 19, 22).

### C. The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work

experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion

throughout the process. *See Washington*, 906 F.3d at 1359; 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Jones met the insured status requirements through December 31, 2020. (Tr. 18). At step one of the evaluation, the ALJ found Jones had not engaged in substantial gainful activity since the alleged onset date. (Tr. 18). At step two, the ALJ characterized Jones's severe impairments since March 1, 2015 as: back disorder (lumbar and cervical spine degenerative disc disease); knee arthrosis (left knee replaced); sleep apnea; hypertension; hyperlipidemia; obesity; bipolar disorder; and alcohol and marijuana abuse. (Tr. 18). Beginning on January 5, 2018, the ALJ found Jones had the all the same severe impairments as before, except the alcohol and marijuana abuse. (Tr. 18-19). At step three, the ALJ determined Jones did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 19).

As a predicate to step four, the ALJ arrived at the following RFC for the period prior to January 5, 2018:

> [T]he claimant had the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b). He can lift, carry, push and/or pull twenty (20) pounds occasionally and ten (10) pounds frequently. He can stand and walk for approximately six (6) hours and can sit for approximately six (6) hours in an 8-hour workday with normal breaks. He can occasionally climb stairs, balance, stoop, kneel, crouch and crawl, but he should never climb ladders or scaffolds. Reaching overhead would be limited to no more than frequently. He must avoid exposure to vibration, unprotected heights and hazardous machinery. He can perform tasks that are simple, routine in nature, and that can be learned in 30 days or less. This person should have no interaction with the general public unless it is merely superficial and only occasional interaction with co-workers and supervisors. (superficial is defined as giving simple information back and forth).

(Tr. 22-23). And for the period beginning on January 5, 2018, the ALJ arrived at an RFC with the same limitations as before, plus the following: "This person's pain and affective disorder occasionally interfere with concentration, pace and task persistence." (Tr. 30-31). Consequently, at step four, the ALJ found Jones unable to perform any past relevant work. (Tr. 32).

Finally, at step five, the ALJ found that prior to January 5, 2018, there were jobs existing in significant numbers in the national economy that Jones could have performed. (Tr. 32). But beginning on January 5, 2018, the ALJ found there were no jobs existing in significant numbers in the national economy that Jones can perform. (Tr. 33). In support, a vocational expert testified during the ALJ hearing that three occupations represent the kinds of jobs that an individual with Jones's age, education, work experience and RFC (for the period before January 5, 2018) could perform:

6

>    (1) mail sorter, DOT 209.687-026, light, unskilled, SVP 2. There are 96,000 such jobs in the national economy;
>
>    (2) shipping and receiving weigher, DOT 222.387-074, light, unskilled, SVP 2. There are 124,000 such jobs in the national economy; and
>
>    (3) folder, DOT 369.687-018, light, unskilled, SVP 2. There are 107,000 such jobs in the national economy.

(Tr. 120-121).[5] And the vocational expert testified there were no jobs that exist that an individual with Jones's age, education, work experience and RFC (for the period after January 5, 2018) could perform. (Tr. 70). The ALJ, therefore, concluded Jones was not disabled prior to January 5, 2018, but became disabled on that date and has continued to be disabled through the date of the ALJ's decision. (Tr. 34).

## II.  Analysis

Jones's appeal asks us whether the ALJ was required to treat evidence from two mental health practitioners as medical opinions and to articulate the weight given to them. (Doc. 24, pp. 9, 19).

### A.  Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127,

---

[5] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

7

1132 (11th Cir. 2021). While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.   Whether the ALJ properly considered the evidence from Dr. Jindrich and Dr. Gehle.**

Patricia Jindrich, Ph.D., is a psychologist for the Department of Veterans

Affairs, and she examined Jones in December 2016 for a Mental Disorders Disability Benefits Questionnaire. (Tr. 700). She reviewed Jones's history of mental illness and cannabis abuse, past hospitalizations, and his inability to maintain employment due to bipolar anger and impulse control issues. (Tr. 702). Jindrich noted Jones displayed symptoms, including: impaired judgment; difficulty in establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances, including work or a work-like setting; impaired impulse control, such as unprovoked irritability with periods of violence; persistent delusions or hallucinations; and neglect of personal appearance and hygiene. (Tr. 704). She diagnosed Jones with bipolar disorder mixed with psychotic features, noting that Jones experienced paranoid delusions and hallucinations. (Tr. 700).

Jindrich checked a box on the questionnaire that Jones had "occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood." (Tr. 701). She also attached an addendum that included a narrative, wherein Jindrich found Jones's disability VA rating was 70% since 2012, and she found he has been incapable of engaging in substantial gainful activity since March 2015 or 2016. (Tr. 705).[6] She reiterated Jones's symptoms stemming from his bipolar disorder, and made her own

---

[6] Jindrich first states she believes Jones has been incapable of engaging in substantial gainful activity since March 2015, but in the last summary sentence, Jindrich changed it to say March 2016. (Tr. 705).

9

observations that Jones is articulate for short periods of time, but as a proud male, he is reluctant to fully discuss his feelings and cognitive process. (Tr. 705). She also stated Jones was "unable to work." (Tr. 700).

Nicholas Gehle, Psy.D. is a licensed psychologist who evaluated Jones on January 5, 2018—the date the ALJ found Jones became disabled. (Tr. 707). Gehle was a one-time examiner who performed a consultative psychological evaluation of Jones at the request of the administration. (Tr. 707). Gehle did not review Jones's past medical records—rather Gehle's evaluation was based on interviews with Jones and his wife as well as a November 1, 2017 Report of Contact provided by a state agency. (Tr. 707). On mental status examination, Jones demonstrated adequate attention and concentration but had mildly impaired mental flexibility. Jones did not display any significant difficulty in processing speed, and his receptive and expressive language was adequate. His immediate memory was adequate, his recent memory was moderately impaired, and his remote memory was fair. Jones's judgment and insight were adequate, and his thought formation and content was appropriate and unremarkable. (Tr. 709-710).

Based on the evaluation, Gehle summarized his examination with Jones, such that Jones's mental health symptoms were "moderately to severely impacting his activities of daily living, his vocational performance, and his interpersonal interactions." (Tr. 710). Gehle characterized Jones's then-current prognosis as

guarded, and Gehle stated that Jones should not manage his own benefits or make financial decisions. (Tr. 710).

Jones contends Jindrich's determination that Jones was "unable to work" and Gehle's determination that Jones's symptoms were "moderately to severely impacting … vocational performance" are medical opinions. As such, Jones argues the ALJ was required to articulate weight given to them. (Doc. 24, p. 11). But that was the framework for disability claims filed before March 27, 2017. Back then, "medical opinions" were defined more broadly to mean "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Under that framework, the ALJ was required to state with particularity the weight given to a physician's opinion and the ALJ's reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-1179 (11th Cir. 2011).

For disability cases filed on or after March 27, 2017—such as this one—the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various

11

demands of work and adapt to work-related conditions. *See* 20 C.F.R. § 404.1513(a)(2). And medical opinions related to claims filed on or after March 27, 2017, are subject to a different assessment about their persuasiveness rather than their weight. *See* 20 C.F.R. §§ 404.1520c, 404.1527(c). The current regulations also provide that issues reserved to the Commissioner—such as the inability to work—and conclusions of other agencies—like the VA—are neither considered nor discussed. 20 C.F.R. §§ 404.1520(a)(3), 404.1520b(c). Thus, Jones's points of error lack merit. Neither Jindrich nor Gehle supplied "opinions." And any ultimate conclusion that Jones was unable to work as well as any disability conclusion by the VA need not be considered.

Perhaps for the sake of argument, the Commissioner appears to accept the suggestion that Gehle supplied a medical opinion. And from there the Commissioner argues substantial evidence supported the ALJ's decision to discredit Gehle's opinion as applicable to the period prior to January 5, 2018. While, as discussed above, Gehle did not supply a medical opinion and so no persuasiveness analysis was required, even if construed as a medical opinion, substantial evidence supports a finding that the evidence from Gehle was not persuasive for the period prior to January 5, 2018. (Tr. 22-30).

The evidence prior to January 5, 2018, demonstrated mostly moderate findings or limitations. This evidence includes: the consultative examination with

12

Samantha Lindmeier, Ph.D., in April 2016 (Tr. 25-26, 368-371); the (physical) consultative examination with Stephen Gelovich, M.D., in April 2016 (Tr. 26, 372-377); evaluations at the VA hospital documenting normal psychological findings in 2017 (Tr. 27-28, 836, 845, 877); and the medical findings of the psychological consultants, Drs. Bauer and DeCubas, who reviewed the evidence and determined that Jones had mild to moderate limitations in mental functioning (Tr. 28-29, 79-80, 84-85, 94-95, 98-100).

As the Commissioner correctly points out, there was essentially no mental health *treatment* documented in the medical evidence for the relevant period from the alleged onset date in 2015 through the established onset date of disability—the aforementioned records are merely single *evaluations*, or they assessed mental health incidental to a physical examination. (Doc. 24, p. 22). The ALJ did not find Gehle's "opinion" persuasive for the period predating the established onset date—also the date of Gehle's evaluation—because it was not supported by or consistent with the evidence predating it. (Tr. 29-30). Thus, the ALJ properly adhered to the regulations and provided substantial evidence for finding Gehle's opinion not persuasive with respect to the period predating the opinion. *See* 20 C.F.R. § 404.1520c(a)-(c).

But beginning on January 5, 2018, the ALJ implicitly found Gehle's opinion persuasive because it was consistent with Jones's allegations regarding his

13

symptoms and other evidence post-dating Gehle's evaluation. (Tr. 31). Specifically, Gehle's assessment and mental limitations were consistent with evidence showing that Jones had to be involuntarily hospitalized via the Baker Act due to worsening psychotic symptoms in May 2018 (Tr. 31-32). Jones naturally does not challenge the ALJ's assessment of Gehle's opinion from January 5, 2018, and after. (Tr. 30-31, 33). And the ALJ's decision to not credit Gehle's statements as applicable to the period before they were made is supported by substantial evidence. Thus, substantial evidence supports the ALJ's decision that Jones was not disabled for the period until January 5, 2018, and that, as of that date, his condition had worsened and he became unable to perform substantial gainful activity thereafter. (Tr. 22-34).

## III. Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter

judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** in Fort Myers, Florida on September 27, 2021.

*[signature: Nicholas P. Mizell]*
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE